UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES WILLIE HOLT,

      Petitioner,

v.                                Case No. 3:21-cv-390-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

**ORDER**

**I. Status**

Petitioner James Willie Holt, an inmate of the Florida penal system, initiated this action on April 7, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Holt challenges a 2016 state court (Duval County, Florida) judgment of conviction for lewd or lascivious molestation. He raises four grounds for relief. See Petition at 9–27. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 6). They also submitted exhibits. See Docs. 6-1

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

through 6-3. Holt filed a brief in reply. <u>See</u> Reply (Doc. 9). This action is ripe for review.

## II. Relevant Procedural History

On August 8, 2016, the State of Florida charged Holt by amended information with one count of lewd or lascivious molestation of three-year-old C.L.B. Doc. 6-1 at 13. Holt proceeded to a trial, and on August 18, 2016, a jury found Holt guilty of the single offense charged. Doc. 6-2 at 171. On September 21, 2016, the trial court sentenced Holt to life in prison. <u>Id.</u> at 189–94.

On direct appeal, with the benefit of counsel, Holt filed an initial brief, arguing the trial court erred when it: (1) admitted child hearsay into evidence, and (2) instructed the jury that they could consider <u>Williams</u>[3] Rule evidence to corroborate C.L.B.'s statements. Doc. 6-3 at 2–24. The State filed an answer brief, <u>id.</u> at 26–50, and Holt replied, <u>id.</u> at 52–62. The First DCA per curiam affirmed Holt's conviction and sentence without a written opinion on August 17, 2018, <u>id.</u> at 64, and issued the mandate on September 7, 2018, <u>id.</u> at 65.

---

[3] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

2

On July 1, 2019, Holt filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising three grounds for relief. Id. at 71–85. The postconviction court dismissed the motion and granted Holt leave to amend. Id. at 94–95. Holt filed an amended Rule 3.850 motion, in which he alleged counsel was ineffective when he: failed to investigate Holt's alibi (ground one); failed to call Beverly Holt as a witness (ground two); and refused to allow Holt to testify at trial (ground three). Id. at 96–110. The State responded. Id. at 154–64. The postconviction court conducted an evidentiary hearing, after which it denied relief on all grounds. Id. at 138–41. On November 4, 2020, the First DCA per curiam affirmed the denial of relief without a written opinion, id. at 289, and on December 2, 2020, it issued the mandate, id. at 291.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Holt's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme

4

malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as

5

persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

6

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571

7

U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

8

established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal

9

> proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

11

> innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
> (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of

> reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose

13

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are

considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Holt argues counsel was ineffective when he failed to investigate Holt's alibi. Petition at 9. The molestation occurred on October 28, 2014, while Holt's wife, Beverly Holt, was babysitting C.L.B. at their house. <u>See</u> Docs. 6-1 at 9 (arrest warrant affidavit); 6-2 at 2–169 (trial transcript). Holt maintains that he "was attending school [at Florida State College] for the better part of the day." Petition at 9. According to Holt, "it was only a matter of minutes prior to going to school and after coming home from school that he actually had access to the alleged victim in his home to which his wife would have testified that the incident could have never occurred because she had constant supervision of the child during these minimal times in question." <u>Id.</u> at 10. However, he asserts that counsel neither called his wife as a witness, nor investigated "school records and class schedules, as well as teacher witnesses." <u>Id.</u> Holt also complains that the postconviction court did

15

not appoint counsel to represent him at the evidentiary hearing on this claim.

Id. at 14–15.

Holt raised a substantially similar claim as ground one of his Rule 3.850 motion. Doc. 6-3 at 103–04. Following an evidentiary hearing, the postconviction court denied relief:

> In Ground One, Defendant alleges counsel was ineffective for failing to investigate an alibi that he was at school and the testimony of his wife, Beverly Holt. The court adopts the response of the state. See Barnes v. State, 38 So. 3d 218 (Fla 2d DCA 2010)[.] Additionally, the Court conducted an evidentiary hearing wherein defense counsel testified that he investigated the defendant's claim of an alibi provided by the school and found that it in fact did not provide an alibi for the time period in question. Further, he deposed and had Ms. Beverly Holt under subpoena at trial. He made a strategic decision not to call her and released her as a witness during the State's case after a discussion with the Defendant. He believed her testimony would have been detrimental to the strategy of defense.

Id. at 139–40 (record citations omitted). The State's response stated in relevant part:

> The State's initial discovery exhibit disclosed witness Beverly Holt, who was Defendant's wife at the time of the crime. Defendant listed Beverly Holt as a defense witness. On March 16, 2016, Beverly Holt was deposed by Defense Counsel. During deposition Beverly Holt stated that on the day of the crime "Mr. Holt was in school during the morning hours and he

16

left the house approximately about 8:00 o'clock, and he was gone throughout the day . . ." Defense counsel questioned "Did you see Mr. Holt that day prior to [redacted] being returned back to [redacted]." Beverly Holt replied "Yes, I saw him . . . Probably around 4:00." Defense Counsel questioned "Do you know when she picked her up or what time or about?" Beverly Holt replied "About 5:30 or 6:00, somewhere like that." Defense counsel continued by asking "So during that day it would be fair to say that the extent of time that had a possibility of Mr. Holt overlapping the time that [redacted] was in the house would have been around 6:00 a.m. to 8:00 a.m. in the morning. Would that have been the morning hours where they would have been potentially in the same house at the same time?" Beverly Holt replied "Yes." Defense counsel questioned "And then in the afternoon would have been somewhere like 4:00 to whenever she was picked up around 5:30ish?" Beverly Holt answered "Yes."

Defense Counsel's deposition of Beverly Holt clearly refutes Defendant's assertion that Defense Counsel failed to reasonably investigate Defendant's claimed alibi. Defense counsel specifically questioned Beverly Holt about the claimed alibi and asked detailed questions regarding the specific time period that Defendant was at college on the date of the crime. Defense Counsel's questioning of Beverly Holt verified that Defendant was at their home for approximately four hours while the victim was present. Thus, Defense Counsel confirmed with Defendant's wife that Defendant did not have an alibi and indeed had the opportunity to commit the crime for which he was convicted. Once Beverly Holt factually refuted the Defendant's alibi there was no additional investigation that reasonably needed to be conducted.

17

Id. at 159–61 (record citations omitted). The First DCA per curiam affirmed Holt's conviction and sentence without a written opinion.

To the extent that the appellate court decided this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

At the evidentiary hearing, counsel testified that he concluded the evidence did not support a viable alibi defense. Doc. 6-3 at 199. First, counsel noted that he deposed Beverly Holt before trial. Id. at 187. Contrary to Holt's statements, she disclosed that he was in the house at the same time as the victim for approximately four hours on the day of the incident. Id. at 187, 199. As such, he determined that her testimony did not provide an alibi for

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

Holt. Id. at 200. Counsel also consulted with Holt about his class schedule at

Florida State College:

> So we did talk about it and it was more about the
> evening. I believe it was he could stay there, but it
> wasn't actually classes. So it was a class schedule and
> there were periods where you have to do some work,
> but because of the software programs they use, you
> have to go to the lab to do the software program and
> that was on your own time. So it wasn't like he would
> have been in class during that time.

Id. at 199–200.

The Court notes that "[t]he Supreme Court has mandated a highly

deferential review of counsel's conduct, especially where strategy is involved,"

and "[i]ntensive scrutiny and second-guessing of attorney performance are

not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994)

(citing Strickland, 466 U.S. at 689–90)). The Eleventh Circuit has explained

that:

> Inquiries into strategic or tactical decisions
> challenged as ineffective assistance of counsel involve
> both a factual and a legal component. The question of
> whether an attorney's actions were actually the
> product of a tactical or strategic decision is an issue
> of fact, and a state court's decision concerning that
> issue is presumptively correct. By contrast, the
> question of whether the strategic or tactical decision
> is reasonable enough to fall within the wide range of
> professional competence is an issue of law not one of
> fact, so we decide it de novo.

19

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

The postconviction court determined counsel's actions were strategic. Holt has not provided clear and convincing evidence to overcome this factual determination; therefore, the Court assumes under § 2254(e)(1) this factual finding is correct. The Court further finds that counsel's decision not to pursue the alibi defense was reasonable. Indeed, the transcript of Beverly Holt's deposition confirms she stated under oath that the victim and Holt were in the house at the same time from 6:00 a.m. to 8:00 a.m. and from 4:00 p.m. to 5:30 p.m. Doc. 6-3 at 220–21. Therefore, her testimony would have contradicted Holt's assertion that he was in the house at the same time as the victim only for "a matter of minutes prior to going to school and after coming home from school." Petition at 10.

Moreover, as demonstrated by his testimony at the evidentiary hearing, counsel investigated Holt's class schedule. However, he determined that it would not sufficiently support an alibi defense. Considering the results of counsel's preliminary investigation in conjunction with Beverly Holt's deposition testimony, it was reasonable for counsel not to further investigate the defense. Certainly, "lawyers do not enjoy the benefit of endless time, energy or financial resources." Rogers v. Zant, 13 F.3d 384, 387 (11th Cir.

1994). "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." <u>Strickland</u>, 466 U.S. at 691. The Court finds counsel made a reasonable, strategic decision. As such, Holt has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance.

Insofar as Holt argues that the postconviction court's failure to appoint counsel rendered its factual findings unreasonable, the Court is not persuaded. The Eleventh Circuit has recognized "the possibility that a state court's fact-finding procedure could be so deficient and wholly unreliable as to result in an unreasonable determination of the facts under § 2254(d)(2) and to strip its factual determinations of deference." <u>Landers v. Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1297 (11th Cir. 2015). But "consistent with AEDPA's statutory scheme, 'this standard is difficult to meet . . . because it was meant to be.'" <u>Id.</u> (quoting <u>Richter</u>, 562 U.S. at 102).

Here, Holt points to no specific evidence, nor identifies a particular witness that he required an attorney's assistance to obtain. He merely complains the postconviction court did not appoint counsel to represent him

at the hearing. But given that a state court is not required to appoint counsel for a postconviction movant, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987), this failure, by itself, is not enough to show that the state court's fact-finding procedure was "so deficient and wholly unreliable as to result in an unreasonable determination of the facts under § 2254(d)(2) and to strip its factual determinations of deference," <u>Landers</u>, 776 F.3d at 1297. Accordingly, Holt is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

Next, Holt contends that counsel was ineffective when he failed to call Beverly Holt as a witness. Petition at 16. He alleges Beverly Holt would have testified "that she never took her eyes off of the victim during the time that Petitioner was in the home prior to him leaving for school and after his return home." <u>Id.</u> According to Holt, counsel testified at the evidentiary hearing that he did not call Beverly Holt as a witness because "he was worried about her credibility being impeached regarding conflicting statements made by her and petitioner." <u>Id.</u> Counsel testified Holt informed law enforcement Beverly Holt never left him alone with children because she knew he was a registered sex offender, whereas Beverly Holt denied such an

arrangement existed. Id. Holt argues counsel should have known that he could not impeach Beverly Holt with Holt's statement. Id. at 17.

Holt raised a substantially similar claim as ground two of his Rule 3.850 motion. Doc. 6-3 at 104–05. The postconviction court held an evidentiary hearing, after which it denied relief:

> In Ground Two, Defendant contends counsel was ineffective for failing to call Beverly Holt as a witness. During the evidentiary hearing defense counsel clearly set forth why he did not call her as a witness. Her testimony would have been detrimental to the defense strategy.

Id. at 140. The First DCA per curiam affirmed Holt's conviction and sentence without a written opinion.

To the extent that the appellate court decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holt is not entitled to relief on the basis of this claim.

The postconviction court determined counsel's actions in not calling Beverly Holt as a witness were strategic. Holt again has not provided clear and convincing evidence to overcome this factual determination; therefore, the Court assumes under § 2254(e)(1) this factual finding is correct. The Court further finds that counsel's decision not to call Beverly Holt as a witness was reasonable. At the evidentiary hearing on the Rule 3.850 motion, counsel testified that he chose not to call Beverly Holt as a witness in part because her testimony would have placed Holt and the victim in the house at the same time for approximately four hours that day. Doc. 6-3 at 187, 190–91. In addition, he noted that the State's case largely relied on the testimony of the victim's mother, C.D.,[8] a four-time convicted felon. See id. at 191–93. C.D. provided the only evidence that placed the victim at Holt's house. Id. Counsel testified that C.D. also "was the only one that was testifying to the child hearsay in regard to how the disclosure came out. And the disclosure, how it came out, she was inconsistent with the child language." Id. at 191. Counsel explained that by not calling Beverly Holt as a witness, he could argue the State's case relied solely on the credibility and testimony of C.D. Id. at 191. Based on this rationale, the Court finds counsel's strategy was reasonable.

---

[8] The Court will refer to the victim's mother by her initials.

Nevertheless, Holt argues that counsel failed to call Beverly Holt as a witness because he erroneously believed the State could impeach her with Holt's prior inconsistent statement. While the record reflects that counsel arguably referred to a similar concern during the evidentiary hearing,[9] he also testified that he chose not to call Beverly Holt primarily because he did not want her to corroborate C.D.'s testimony. See id. at 190–91. Regardless, "[i]t is reasonable—and not ineffective—for trial counsel to eliminate certain lines of presentation if he has misgivings about hurtful cross-examination and rebuttal witnesses." Lukehart v. Sec'y, Fla. Dep't of Corr., 50 F.4th 32, 47 (11th Cir. 2022) (quotation marks and citation omitted). The Court finds counsel made a reasonable, strategic decision to not call Beverly Holt as a witness, and therefore, counsel did not perform deficiently. As such, relief on the claim in Ground Two is due to be denied.

### C. Ground Three

In Ground Three, Holt alleges that counsel was ineffective when he "interfere[d]" with Holt's right to testify. Petition at 20. According to Holt, counsel advised him that if he testified, the jury would learn the nature of his

---

[9] Counsel expressed his concern "that [Beverly Holt's] testimony would have been contradicted by statements that the defendant made to the police[,]" and, more generally, that the State would attack her credibility. Doc. 6-3 at 189. He did not use the term impeachment.

prior convictions and his status as a sex offender. Id. He also contends counsel advised him that "because he already had two child Williams rule witnesses testifying that he had molested them too, the jury would directly know that he was specifically convicted of these other sexual acts against these children." Id.

As ground three of his Rule 3.850 motion, Holt alleged that counsel was ineffective when he refused to allow Holt to testify at trial. Doc. 6-3 at 106–08. Notably, Holt failed to allege that counsel advised him the jury would learn the nature of his prior convictions if he testified. See id. Following an evidentiary hearing, the postconviction court denied relief, finding:

> In Ground Three, Defendant alleges counsel failed to subject the State to a meaningful adversarial process and interfered with the Defendant's right to testify. The Defendant's claims are speculative and general. His allegation of the interference with testimony at trial are refuted by the dialogue the court had with the Defendant at trial.

Id. at 140 (record citation omitted). In his initial brief on direct appeal, Holt raised for the first time his claims that counsel misadvised him about testifying. Id. at 259–61. The State filed an answer brief, asserting Holt

26

preserved the issue for appellate review and addressing the merits. Id. at 284–86. The First DCA per curiam affirmed without a written opinion.

Respondents argue that the Court should presume the First DCA's silent affirmance rests on an independent and adequate state procedural ground barring federal review—a party cannot raise a new claim for the first time in an appeal of a postconviction order. See Response at 35–37. However, the State did not argue the procedural bar on direct appeal. It only addressed the merits. As such, the Court does not assume that the First DCA affirmed on procedural grounds. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir. 1989). Regardless of any procedural default, the claim lacks merit and relief on it is due to be denied.

First, it appears Holt's allegations arise from the following exchange at the evidentiary hearing:

> THE COURT: I had the hearing only one ground [sic], but while I have you here, I'm going to address some of the others. Mr. Holt alleges in Ground 3 to some extent that you interfered with his right to testify. Can you please—how did that discussion with him go and what happened there?

MR. BEARD[10]:   That discussion, I know we would have had it in regard to the strategy of the case and I don't recall the specifics of the conversation, but there's—I don't know what I would have done to interfere. I would have essentially told him he could, but, I guess, the only way that I could interfere would be the fact that we're at that stage in trial and we've gone through the strategy.

….

So I would have had that conversation earlier on saying, hey, this is—this is the strategy, if you get on the stand and you're going to testify to that, there's no one now to corroborate your statement so if we're releasing [Beverly Holt] and you're planning on testifying, I can't just release her because I'm gonna need her to say that you didn't have contact with [the victim] if you're going to put yourself at the house with her.

THE COURT:   <u>And did Mr. Holt have—he had prior felony convictions that would have come out?</u>

MR. BEARD:   <u>Yes. Well, he had the Williams Rule evidence that was coming in as well.</u>

---

[10] Assistant Public Defender Joshua Beard.

| THE COURT: | But in terms of he was a registered sex offender, so he would have been cross-examined with those felony convictions. |
|---|---|
| MR. BEARD: | I believe so. I'm fuzzy on the prior record in regard to that, but it was more along the lines of at this point, the statements that you are going to corroborate the witness that you were present, even for a matter of minutes with the child, you're now essentially saying that you had no access to this child, except for the mother saying the child is the one that indicated that. |

Doc. 6-3 at 196–98 (emphasis added). The Court does not read the above exchange as supportive of Holt's allegations. At the time of Holt's trial, counsel had approximately six years of experience as a criminal attorney, and he had participated in at least twenty-five criminal trials. Id. at 186. It is more likely that counsel interpreted the postconviction court's imprecise question about whether the prior felony convictions would "come out" as whether the jury would learn the number of those convictions. Similarly, the postconviction court's exchange with counsel regarding Holt's status as a sex offender likely was an acknowledgement that his sex offenses provided the basis for at least some of his prior felony convictions, and the State could

29

cross-examine about the number of those convictions. See Doc. 6-2 at 184 (detailing prior rape and sexual battery convictions).

Nevertheless, even assuming arguendo counsel performed deficiently, Holt cannot demonstrate prejudice. The Court initially notes that Holt fails to set forth the proposed testimony that he believes would change the outcome of the case. But the record reflects that during his interview with law enforcement, Holt relayed the following: "[H]e was away from his residence most of the day that his wife was babysitting [redacted] and that he only saw her for a few minutes when he got home before the child's [redacted] arrived to pick her up. . . . [H]e spoke to the child, but denied any physical contact with her whatsoever." Doc. 6-1 at 9. The Court presumes Holt would have testified similarly at trial.

If Holt testified that he only interacted with the victim for several minutes, the State would have had the opportunity to call Beverly Holt as a rebuttal witness. Consistent with her deposition, Beverly Holt would have provided testimony that placed Holt in the house at the same time as the victim for a period of approximately four hours. Doc. 6-3 at 220–21. In turn, her testimony would not only have contradicted Holt's version of events, but also corroborated the testimony of the victim's mother, C.D. In conjunction

with the other evidence presented at trial, including the child victim's statement within a few hours of returning from Holt's house that "Mr. James" touched her, as well as the two <u>Williams</u> Rule witnesses, no reasonable probability exists that the result of the proceeding would have been different if Holt had testified at trial. Therefore, Holt is not entitled to federal habeas relief on the claim in Ground Three.[11]

### D. Ground Four

Finally, Holt argues that the trial court violated his Sixth Amendment right to confrontation when it allowed the introduction of the non-testifying child witness's hearsay statements without providing Holt the right to cross-examine her. Petition at 23. He also appears to allege the trial court made insufficient findings as to the reliability and trustworthiness of the hearsay statements. <u>Id.</u> at 27. Holt raised this issue in his brief on direct appeal, Doc. 6-3 at 14–18; the State filed a brief in response, <u>id.</u> at 36–45; and the First DCA affirmed Holt's conviction and sentence per curiam without issuing a written opinion, <u>id.</u> at 64. For purposes of analysis, the Court will assume

---

[11] To the extent Holt argues the postconviction court's failure to appoint counsel rendered its factual findings unreasonable, his claim is without merit for the reasons stated in the discussion of Ground One.

31

that Holt sufficiently exhausted the claim in state court and that the claim is properly before this Court.[12]

The State, in its brief, addressed the claim on the merits. Id. at 36–45. Thus, the appellate court may have affirmed Holt's conviction based on the State's merits argument. If the appellate court addressed the merits, Holt would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a careful review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holt is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Holt's claim is without merit. The Sixth Amendment provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. A defendant's Sixth Amendment right to confrontation forbids the government

---

[12] See Response at 43–46.

from admitting the <u>testimonial</u> statement of a witness who does not appear at trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. <u>Crawford v. Washington</u>, 541 U.S. 36, 53–54 (2004); <u>see also</u> <u>Smith v. Arizona</u>, 144 S. Ct. 1785, 1792 (2024) ("The Clause's prohibition 'applies only to testimonial hearsay'—and in that two-word phrase are two limits." (quoting <u>Davis v. Washington</u>, 547 U.S. 813, 823 (2006))). The Supreme Court has defined testimonial statements as "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." <u>Crawford</u>, 541 U.S. at 52. "[P]rivate conversations between family members in the home are typically nontestimonial when they were 'not made under examination, [were] not transcribed in a formal document, and [were] not made under circumstances leading an objective person to reasonably believe the statement would be available for use at a later trial.'" <u>United States v. Killen</u>, 729 F. App'x 703, 713 (11th Cir. 2018)[13] (quoting <u>United States v. Brown</u>, 441 F.3d 1330, 1360 (11th Cir. 2006)).

---

[13] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

C.D., the victim's mother, conveyed the hearsay statements as follows:

> Q    If you could tell the jury what happened when you tried to give [C.L.B.] a bath?
>
> A    When I went to give her a bath, she was crying. She didn't want to sit down in the water, and I was asking her why. She was just standing there crying, and I was asking her, you know, what was wrong, why didn't you want to sit down? And she said her bottom hurt. She said it hurt down there.
>
>      ….
>
> [A]  And she said that her bottom hurt. And I asked her why, and she said Mr. James touched me down there.
>
>      ….
>
> Q    Did [C.L.B.] say anything else about what Mr. James had done in the bathtub?
>
> A    Yes.
>
> Q    What did she say?
>
> A    She said he kissed her right here (indicating).
>
> Q    Okay. And as you said that, you took your finger and touched your lips. Is that what [C.L.B.] did?
>
> A    Yes.

Doc. 6-2 at 30–32. The victim's hearsay statements fail to implicate the Confrontation Clause because they were not testimonial. The three-year-old victim made the statements to her mother in private, in their house, to explain why she did not want to sit in the water during bathtime. Such circumstance would not lead an objective person to reasonably believe the statements were testimonial in that they would be available for use at a later trial. See Killen, 729 F. App'x at 714 (finding boy's statement to his mother about sending nude photos to defendant was not testimonial where it was made soon after his interaction with defendant, in private, in their home, to explain his distress).

To the extent Holt argues that the trial court made insufficient findings as to the reliability and trustworthiness of the child's hearsay statement, he appears to rely on section 90.803(23)(c), Florida Statutes, as the basis for his claim. Petition at 25, 27. Section 90.803(23), Florida Statutes, allows the introduction of a child victim's hearsay statements under certain circumstances and only after the trial court makes specific findings of fact on the record. Holt's claim, thus, presents an issue of state law that is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions."). If Holt intended to assert the trial court violated due process, his claim is still without merit. The State filed a notice of child hearsay evidence that set forth the person making the statement, the person to whom the statement was made, the approximate date and time the statement was made, a summary of the statement, and the circumstances surrounding the statement. Doc. 6-1 at 71. The trial court then conducted a hearing at which C.D. testified and the defense had the opportunity to cross-examine her. See id. at 75–109. At the conclusion of the hearing, the trial court made specific findings of fact. Id. at 95–97. On this record, the Court does not find a constitutional violation occurred. Therefore, Holt is not entitled to federal habeas relief on the claims in Ground Four.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Holt seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Holt "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting

36

Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Holt appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of September, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 8/27
c:      James Willie Holt, #294844
        Counsel of record